### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LILY SIMPKINS,                                         Case No. 1:11-cv-165

          Plaintiff,                              Barrett, J.
                                                       Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Lily Simpkins filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents five claims of error for this Court's review.   For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

In May 2007, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging a disability onset date of April 1, 2004, due to physical impairments.  (Tr. 134, 139).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An administrative hearing was held on October 13, 2009.  (Tr. 25-70).  At the hearing, ALJ Larry A. Temin heard testimony from Plaintiff and Robert Breslin, an

impartial vocational expert. On November 12, 2009, the ALJ denied Plaintiff's application in a written decision. (Tr. 10-19).

The record on which the ALJ's decision was based reflects that Plaintiff was 45 years old at the time of her alleged disability onset date, and had a ninth grade education. (Tr. 17, 30). Plaintiff had past relevant work as a cashier and a stocker. (Tr. 32). Plaintiff last worked in 2004 as a cashier at a gas station. (Tr. 32).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease; cervical sponylosis, obesity[1]; bilateral carpal tunnel syndrome; and depressive disorder." (Tr. 12). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 12). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following exceptions:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk 4 hours in an 8-hour workday. She can stand an hour at a time, and then must be able to sit for 5 minutes. She can walk for 30 minutes at a time, and then must be able to sit for 5 minutes. The claimant can sit 6 hours in an 8-hour workday. She can sit 2 hours at a time, and then must be able to stand for 5 minutes. She should never balance, kneel, crouch, or crawl. She can occasionally stoop. The claimant should never climb ladders, ropes or scaffolds. She can frequently perform fingering with both hands. She should never climb ramps or stairs. The claimant can perform firm, forceful grasping with both hands only to the extent needed to carry out the above lift/carry limitation. She should never work at unprotected heights or around hazardous machinery. She is able to remember and carry out only short and simple instructions. The claimant should not perform work requiring more than

---

[1] At the administrative hearing, Plaintiff testified that she was 5'7" and weighed 300 pounds. (Tr. 29).

ordinary and routine changes in work setting or duties.  She is able to make only simple work-related decisions.

(Tr. 14).   Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform her past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy.   (Tr. 17, 18).   Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI benefits.  (Tr. 18-19).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court,  Plaintiff maintains that the ALJ erred by: 1) improperly weighing the opinion evidence; 2) improperly formulating Plaintiff's RFC assessment; 3) failing to properly consider the effects of Plaintiff's obesity; 4) selectively considering the evidence; and 5) failing to pose a valid hypothetical question to the vocational expert.  As discussed below, the Court finds that the ALJ improperly evaluated the medical evidence, and therefore his RFC assessment is not supported by substantial evidence.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for DIB or SSI a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner

determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

Upon careful review, the undersigned finds that the ALJ's decision cannot be affirmed as it stands and that further fact-finding is necessary.  As detailed below, the ALJ improperly evaluated the medical evidence and therefore, the ALJ's RFC finding is not supported by substantial evidence, thereby requiring remand.

*1.  ALJ's RFC Assessment*

In this case, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following exceptions:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. **The claimant can stand and/or walk 4 hours in an 8-hour workday. She can stand an hour at a time, and then must be able to sit for 5 minutes.  She can walk for 30 minutes at a time, and then must be able to sit for 5 minutes. The claimant can sit 6 hours in an 8-hour**

> **workday. She can sit 2 hours at a time, and then must be able to stand for 5 minutes.** She should never balance, kneel, crouch, or crawl. She can occasionally stoop. The claimant should never climb ladders, ropes or scaffolds. She can frequently perform fingering with both hands. She should never climb ramps or stairs. The claimant can perform firm, forceful grasping with both hands only to the extent needed to carry out the above lift/carry limitation. She should never work at unprotected heights or around hazardous machinery. She is able to remember and carry out only short and simple instructions. The claimant should not perform work requiring more than ordinary and routine changes in work setting or duties. She is able to make only simple work-related decisions.

(Tr. 14) (emphasis added).

In making Plaintiff's RFC determination, the ALJ relied on the assessment of Dr. Ray, a state agency physician, who examined Plaintiff in February 2006. Based upon his examination of Plaintiff and from his review of an EMG from March 2001, and x-rays of her lumbar spine, Dr. Ray concluded that Plaintiff is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 367). Dr. Ray further opined that Plaintiff is able to sit for up for up to two hours at a time; stand for up to one hour at a time; ambulate for up to half an hour at a time; occasionally partially bend and stoop; perform partial squatting; and handle objects occasionally. (Tr. 367). He also found that she should avoid kneeling, crawling, climbing, and forceful gripping activities. (Tr. 367). She should also avoid repetitive forceful gripping activities. In support of his findings, Dr. Ray noted that there is no evidence of radiculopathy on examination and the EMG from 2001 documented moderately severe bilateral carpal tunnel syndrome. (Tr. 445).

Plaintiff argues, however, that the ALJ's reliance on Dr. Ray's assessment was error because he did not review Plaintiff's most pertinent records related to her low back impairment, namely, a 2009 MRI of the lumbar spine evidencing moderate degenerative

disc disease and a likely nerve impingement.  Plaintiff also argues that Dr. Ray did not have access to records detailing her current diagnosis of diabetes and obesity.  Thus, Plaintiff asserts that the ALJ's standing and sitting limitations, based on an outdated RFC assessment, are not supported by the record.  The undersigned agrees. [2]

In *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 408-409 (6th Cir. 2009), as in this case, the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician.  The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (*Id.* at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).  However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakely's treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions.  *Blakely*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).  Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis*, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it."  *Id.* at 409 (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

---

[2] Plaintiff also argues that the ALJ's RFC finding failed to properly consider the opinions of her treating physicians.  However, as explained below, Plaintiff's treating physician's did not make specific findings relating to Plaintiff's functional limitations, and thus, the record does not contain any reliable RFC assessments by a treating source.

Under *Blakely*, then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis.*

Here, the ALJ determined that Dr. Ray's assessment was the most comprehensive in Plaintiff's file. The ALJ further determined the evidence of record was consistent with the findings of Dr. Ray with respect to Plaintiff's physical ability to perform work-related activities. In making these findings, the ALJ's decision indicates that he considered evidence obtained after Dr. Ray's assessment, including the results from the July 2009 MRI's of Plaintiff's lumbar spine and cervical spine. The ALJ's decision states in pertinent part:

> The undersigned recognizes that the July 2009 lumbar MRI showed multi-level degenerative disc disease; that the claimant has taken part in physical therapy; and that she takes injections and medication for pain. However, these facts alone do not necessarily establish disability. The entire record must be analyzed as a whole. After carefully considering the entire record evidence, the undersigned concludes that the record as a whole supports the above residual functional capacity. The undersigned did give Plaintiff the benefit of the doubt with respect to the above stand/walk limitation, however.

(Tr. 16).

The ALJ's decision indicates that he considered or at least mentioned the evidence in the record obtained after Dr. Ray's assessment, as outlined in *Blakely*. However, the ALJ's consideration of the later acquired evidence indicates that he inserted his own non-medical opinion including that such evidence was consistent with Dr. Ray's assessment rendered three years prior to the majority of the medical evidence in the record. This was clear error.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the medical opinions of record.  However, it appears in determining that the later acquired evidence of record was consistent with Dr. Ray's assessment the ALJ, in part, impermissibly acted as his own medical expert.  *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975).  While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings.  As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."  *Mason v. Comm' r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir. 1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187-88 (E.D. Mich. 1995)).  *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Here, as noted above, Dr. Ray's findings were based upon an EMG of Plaintiff's hands from 2001 and x-rays of the lumbar spine taken in February 2006.  However, the record contains nearly 200 pages of medical records obtained after Dr. Ray's assessment.  Notably, a 2009 July MRI finding indicating multi-level moderate

degenerative disc disease and a "likely" nerve root impingement at L5. (Tr. 506). Plaintiff was also diagnosed with diabetes and gained approximately 20 to 30 pounds since Dr. Ray's assessment. Although the record contains treatment notes from Dr. Arand and Dr. Portugal from the Maryfield Clinic from August and September 2009, the record does not contain a functional assessment or medical opinion detailing Plaintiff's functional limitations in light of the July 2009 MRI findings, diabetes diagnosis and weight gain. Such objective evidence suggests that Plaintiff's functional limitations may have decreased since Dr. Ray's assessment in 2006.

Accordingly, the undersigned finds that the ALJ improperly made his own evaluation of the medical evidence in determining that the 2009 MRI results were consistent with Dr. Ray's assessment. Accordingly, the ALJ's RFC determination, based upon Dr. Ray's assessment, is not supported by substantial evidence. As such, this matter should be remanded for further fact finding. On remand, the ALJ should be instructed to obtain testimony from a medical expert in order to re-evalaute Plaintiff's physical function limitations based on the complete record.

2. *Evaluation of the opinion evidence.*

Plaintiff also alleges that the ALJ erred in failing to give controlling weight to the questionnaires completed by Plaintiff's treating physicians, Dr. Kejriwal, Dr. Sargero and Dr. Loftus, as well as the assessment of Dr. Staskovich, a state agency psychologist. Plaintiff also asserts that the ALJ improperly credited the finding of Dr. Caldwell, a state agency reviewing physician. Such assertions will be addressed in turn.

A. *Relevant Medical Records*

The record contains treatment notes from Dr. Kejriwal, Plaintiff's primary care physician, from March 2001 through October 2007. In February 2008, Dr. Kejriwal

completed a "Social Security Disability Questionnaire" containing questions prepared by Plaintiff's counsel.    Dr. Kejriwal indicated that Plaintiff suffered from the following impairments: carpal tunnel syndrome, chronic low back pain, hypertension, angina, overweight (severe) and hypothyroidism.    *Id.*    When asked to confirm the reasonableness of Plaintiff's alleged problems with sitting and standing for any length of time, Dr. Kejriwal replied that Plaintiff's mobility was "severely diminished" by her back pain and weight.  (Tr. 422).  When asked whether Plaintiff's low back problems had worsened appreciably in the past year or two, Dr. Kejriwal stated that he was "[u]nable to appreciate . . change in symptoms as pt did not follow up periodically" and did not undergo a repeat MRI.  (Tr. 422).  In response to questioning relating to Plaintiff's bilateral carpal tunnel syndrome, Dr. Kejriwal noted that his most recent examination of Plaintiff's hands indicated "fairly good range of motion [in] both wrists" that was "somewhat painful," and she had a positive Tinel sign in her right wrist.  (Tr. 423).  Dr. Kejriwal further indicated that Plaintiff's obesity could "cause significant breathing problems. . . ." (Tr. 424).

The record indicates that Plaintiff treated with Dr. Sargero, another primary care physician, from July 2008 through September 2009.  (Tr. 552).  In October 2009, Dr. Sargero completed a questionnaire prepared by Plaintiff's attorney. (Tr. 548-50, 551-53). When asked for specific information about Plaintiff's low back problems, including any objective evidence of radiculopathy, Dr. Sargero responded, "See MRI" (Tr. 549).  Dr. Sargero also marked "Yes" in response to a question asking if Plaintiff's obesity contributed to her back and leg pain and whether the recent cervical spine MRI provided an objective basis for her complaints of neck pain.  (Tr. 550).

Lastly, the record also contains treatment notes from Dr. Loftus, a podiatrist, from April 2009 through July 2009. (Tr. 520-537). In August 2009, Dr. Loftus completed a questionnaire prepared by Plaintiff's attorney. (Tr. 539-40). When asked whether Plaintiff had been "suffering from some level or degree of neuropathy secondary to her diabetes which has been affecting her feet," he marked a box indicating "yes" (Tr. 539). When asked whether Plaintiff was obese and whether this contributed to her medical problems, he marked "yes" (Tr. 540). He marked "yes" to indicate that Plaintiff's diabetes and obesity significantly limited her standing and walking abilities. (Tr. 540). He estimated that she could stand/walk for a total of two or three hours in an eight-hour day (Tr. 540).

Additionally, with respect to Plaintiff's mental impairments, in February 2008, Catherine Staskovich opined that Plaintiff was extremely or markedly limited in several functional areas. (Tr. 418). Dr. Staskovich reported a depressed mood, fair judgment and insight, a history of learning disabled classes, and 3/3 object recall after a five-minute delay. (Tr. 419). She opined that Plaintiff's limited cognitive functioning precluded employment in anything but physical jobs. (Tr. 419).

## B. The ALJ's decision

The ALJ gave limited weight to the questionnaires completed by Plaintiff's treating physicians. (Tr. 17). The ALJ found that their responses were conclusory, unsupported by their treatment notes and were inconsistent with other evidence. *Id.* The controlling regulation, 20 C.F.R. § 404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it

controlling weight." *Id.* Likewise, the ultimate "determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Thus, an ALJ may reject a treating physician's opinions on such issues, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).

As noted by the ALJ, Dr. Kejriwal's treatment notes indicate mostly normal or mild findings. (Tr. 363, 403-404). Furthermore, other than asserting that Dr. Sargero's findings should be given deference in light of his longitudinal treatment history, Plaintiff fails to cite to any objective medical evidence in support of Dr. Sargero's opinions. *See Anderson*, 195 Fed. Appx. at 370 (An ALJ need not credit a treating physician opinion that is conclusory and unsupported). Finally, the ALJ declined to fully credit Dr. Loftus' assessment because his findings were inconsistent with his treatment notes. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir.2010) (ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes). Upon careful review, the ALJ's evaluation of these questionnaires appear to be within his "zone of choice." *Felisky v. Bowen*, 35 F.3d at 1035.

Next, Plaintiff argues that the ALJ erred in relying on the findings of Dr. Caldwell, a state agency physician who reviewed Plaintiff's medical file in July 2007. Dr. Caldwell found that Plaintiff was able to handle and finger frequently. Dr. Caldwell opined that Plaintiff could stand for about six hours and sit for about six hours total during the workday. (Tr. 374-75). Although Plaintiff asserts that ALJ *relied* on Dr. Caldwell's findings, the ALJ's decision indicates that he gave only "some weight" to the RFC assessment of Dr. Caldwell. (Tr. 17). The ALJ found that "not all of [Dr. Caldwell's]

findings are supported by the record evidence, namely, her stand/walk limitation, along with certain non-exertional limitations. (Tr. 17). Because Dr. Caldwell's findings were not fully supported by the record, the undersigned finds that the ALJ did not err in assigning some weight to her findings.

Additionally, with respect to Plaintiff's mental impairments, Plaintiff appears to allege in her factual summary that Dr. Staskovich's assessment supports disability based on her mental issues alone. (Doc. 8 at 6). In February 2008, Catherine Staskovich, Ph.D. evaluated Plaintiff at the request of Butler County Department of Job and Family Services and completed at Mental Functional Capacity Assessment Form. (Tr. 417-419). Dr. Staskovich found Plaintiff presented with a depressed mood, had fair judgment and insight, and a 3/3 object recall after a five-minute delay. Dr. Staskovich also indicated that Plaintiff has a history of learning disabled classes. (Tr. 419). She opined that Plaintiff was extremely or markedly limited in several areas, including the ability to understand and remember very short and simple instructions and the ability to complete a normal workday due to psychological based symptoms. (Tr. 418). She opined that Plaintiff's limited cognitive functioning precluded employment in anything but physical jobs. (Tr. 419).

The ALJ gave some weight to Dr. Staskovich opinions, but found that the record evidence did not support all of the limitations given. (Tr. 17). However, the ALJ gave significant weight to the mental assessment of Dr. Schmidtgossling, who examined Plaintiff in 2007. Without elaboration, the ALJ found that Dr. Schmidtgossling's assessment was more consistent with the record. When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human*

14

*Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Because the ALJ failed to explain the rationale for such a finding, the Court is unable to determine if his reliance on Dr. Schmidtgossling's assessment is supported by substantial evidence.

In light of the errors committed by the ALJ as outlined above, on remand the ALJ should be instructed to re-evaluate **all** the opinion evidence, including the findings of Dr. Kejriwal, Dr. Sargero, Dr. Loftus, Dr. Caldwell and Dr. Staskovich.

3. *Consideration of Obesity and Diabetes*

Plaintiff third assignment of error asserts that the ALJ failed to consider the effects of Plaintiff's obesity on her ability to work in violation of Social Security Ruling 02-1p. Plaintiff also alleges that the ALJ erred in failing to find that her diabetes was a severe impairment.  Each assertion will be addressed in turn.

A. *Obesity*

SSR 02-1p provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02-1p.  Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."  *Id.*  Plaintiff argues that the ALJ failed to consider the aggravating effects of Plaintiff's obesity beyond step three in the sequential analysis.

15

Here, the ALJ determined that Plaintiff's obesity was a severe impairment. (Tr. 12). In finding that Plaintiff did not have a Listing level impairment (or combination of impairments), the ALJ's decision indicates that he expressly considered SSR 02-1p and the overall impact of Plaintiff's obesity in relation to her other medical conditions. (Tr. 14). The ALJ further noted that SSR 02-1p also provides that if obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) required by listings 1.02A or 101.02A. The ALJ determined that the record did not indicate that Plaintiff "was unable to ambulate effectively at any material time due to her obesity" the ALJ concluded that Plaintiff's impairments, including her obesity, did not meet the requirements of such Listings. *Id.* The ALJ further determined that the record does not support a finding that Plaintiff's combination of impairments, including obesity, medically equals the criteria of any other listed impairment. (Tr. 14). Despite the conclusory statement that obesity was considered at Step 3, the ALJ's written decision offers no clues as to how Plaintiff's obesity was considered at either Step 3 or Step 4.

The undersigned recognizes that the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006) (stating in a case where obesity was not severe, that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). However, in light of the ALJ's failure to properly evaluate the medical evidence as outlined above, the undersigned

16

finds the ALJ's analysis relating to Plaintiff's obesity is also called into question. Although a detailed Step 3 analysis and more detailed consideration at Step 4 may not be required in every case, I conclude that additional analysis was necessary on the facts of *this* case, where Plaintiff's obesity was a "severe" impairment which clearly had a significant impact on her low back pain and functional limitations.

> B.    Diabetes

Throughout her Statement of Errors, Plaintiff alleges that the ALJ erred by failing to find that her diabetes was a severe impairment.  A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. §404.1520(c).[3]  In the physical context, this means a significant limitation upon a Plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle.  20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1).  In this case, the ALJ found Plaintiff's diabetes to be non-severe because the record did not demonstrate that it caused more than minimal limitations in the ability to perform basic work activities.  (Tr. 13).

Plaintiff appears to argue that the ALJ should have found Plaintiff's diabetes to be a severe impairment based upon Dr. Loftus' diagnosis of diabetes with neuropathy as well as his apparent indication that Plaintiff's obesity affected her diabetes.  (Doc. 8 at 10).  However, neither of these assertions establish that Plaintiff's diabetes significantly limit her ability to perform basic work activities, as required by the regulations for an impairment to be classified as "severe."  20 C.F.R. §404.1520(c).  Nor does the evidence

---

[3] Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. §404.1521(b).

of record. The record indicates that Plaintiff treated with Dr. Loftus, a podiatrist, for diabetic foot care. Dr. Loftus' treatment notes indicate that Plaintiff responded well to treatment and reported significant less pain in her feet after receiving injections. (Tr. 520, 526, 532). Furthermore, as noted by the Commissioner, the July 2008 treatment notes of Dr. Sargero indicated that Plaintiff only had borderline non-insulin dependent diabetes. (Tr. 484), and the record does not document any limitations caused by her diabetes. In any event, because the ALJ improperly evaluated the medical evidence as detailed above, on remand, the ALJ should also be instructed to properly evaluate the record as a whole, including evidence relating to Plaintiff's diabetes.

4. *Selective Review of the Evidence*

Plaintiff argues next that the ALJ erred in selectively evaluating the evidence. Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's testimony relating to her limitations and selectively evaluated her activities of daily living. The undersigned agrees that an ALJ may not selectively rely on evidence in support of his position. Upon careful review, however, the undersigned finds that Plaintiff's assertion are better construed and evaluated as an attack the ALJ's credibility determination.

SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

18

The ALJ's credibility decision must also include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p

At the hearing, Plaintiff testified that she was in significant pain most of the day. She testified that she has to lie down in her recliner for the better part of the day and that she needed help to complete household chores.  She testified that her legs felt like lead weights, mostly in her right leg.  (Tr. 49).  She stated that she could sit for about 15 to 20 minutes and stand for about 10 to 15 minutes at a time. (Tr. 38, 51).  She further testified that she could sit for four hours total per day and stand or walk for four hours total per day.  (Tr. 51-52).  Plaintiff testified that she was depressed, but that she had not seen any mental health professional.  (Tr. 40).  She only saw her family once in a while and did not have any friends.  With respect to her daily activities, Plaintiff testified that she rarely goes to the store, does not drive, and is unable to engage in many household chores, such as doing the dishes, cooking and laundry.  (Tr. 42, 44, 54).

The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they

19

were inconsistent with the ALJ's RFC assessment, which he believed was supported by the objective evidence.  In other words, the ALJ purportedly determined that Plaintiff's complaints of disabling pain and resulting limitations were not supported by the objective evidence in the record.  However, in light of the ALJ's failure to properly consider and evaluate the more recent medical evidence, the ALJ's determination that Plaintiff's subjective complaints were not supported by the objective evidence is not substantially supported.  Accordingly, remand is also necessary for the ALJ to properly assess the credibility of Plaintiff's subjective complaints of pain and provide reasons for his credibility determination that are sufficiently specific to make clear the weight he gave Plaintiff's statements and the reasons for that weight.

5.  *Hypothetical Question to the Vocational Expert*

Finally, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert did not accurately portray Plaintiff's impairments and therefore the ALJ's decision is substantially supported.  Specifically, Plaintiff challenges the ALJ's sit/stand limitations and the testimony of the vocational expert relating to Plaintiff's need to alternate between sitting and standing.  Plaintiff also challenges that ALJ's determination that Plaintiff is capable of "frequent fingering" in light of her carpal tunnel syndrome.

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner may meet his burden through reliance on a vocation expert's testimony in response to a hypothetical question.  To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must

accurately reflect the claimant's physical and mental limitations. *See Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

As detailed above, the ALJ failed to properly evaluate the medical evidence of record relating to Plaintiff's impairments in determining that Plaintiff was capable of performing a range of light work.  As such, the undersigned is unable to determine if the ALJ's hypothetical question to the vocational expert accurately portrayed Plaintiff's impairments. *See White v. Commissioner of Social Sec.*, 312 Fed. Appx. 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments).  Because the court is unable to determine whether the ALJ's hypothetical question accurately portrayed Plaintiff' impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that Plaintiff could perform the jobs identified by the VE.  Accordingly, this issue will also need to be reconsidered in light of any new findings on remand.

### III.  Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider

additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.  All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date.  *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2.  On remand, the ALJ be instructed to: 1) obtain the testimony of a medical expert in order to assess Plaintiff's RFC with respect to her physical impairments; 2) properly assess and evaluate the opinion evidence relating to Plaintiff's mental and physical impairments in accordance with agency regulations and controlling law; and 3) properly consider Plaintiff's credibility and complaints of pain, and provide a clear explanation for the conclusions reached therein.

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

  *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LILY SIMPKINS,                                            Case No. 1:11-cv-165

              Plaintiff,                                     Barrett, J.
                                                             Bowman, M.J.
       v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.


**NOTICE**

       Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of

the filing date of this R&R.  That period may be extended further by the Court on timely

motion by either side for an extension of time.  All objections shall specify the portion(s)

of the R&R objected to, and shall be accompanied by a memorandum of law in support

of the objections.  A party shall respond to an opponent's objections within **FOURTEEN**

**(14) DAYS** after being served with a copy of those objections.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas*

*v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).